IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOEY HOWELL,

                       Plaintiff,

    v.                                              OPINION & ORDER

ANTHONY BROADBENT, JOSEPH CICHANOWICZ,        16-cv-477-jdp
SUSAN DAX, JEREMY MCDANIEL,
and JOSEPH BELZ,

                       Defendants.

---

Plaintiff Joey Howell, an inmate at the Wisconsin Secure Program Facility (WSPF), alleges that Susan Dax, a nurse at Gundersen Boscobel Area Hospital and Clinics, violated his Eighth Amendment rights by sexually assaulting him, and that after he reported the sexual assault, the remaining defendants, all state prison officials, violated his First Amendment rights by retaliating against him.

The state defendants (everyone but Dax) filed a motion for summary judgment based on Howell's failure to exhaust his administrative remedies regarding his claims against them. More specifically, the state argued that Howell failed to appeal his conviction on a conduct report for lying about staff's actions after he reported the alleged sexual assault. In response, Howell stated that he indeed attempted to appeal the conduct report, and he submitted a copy of his completed appeal form and a cover letter he said he sent along with the appeal. Pl.'s Ex. 8 and 9, at Dkt. 31-1 and 31-2. Those documents contained date stamps showing that they had been received by the WSPF Delta Unit on May 18, 2016.

In reply, the state defendants contended that Howell fabricated these documents, stating that they "include several irregularities that belie their authenticity." Dkt. 35, at 2–3.

They noted differences between the spacing and appearance of the letters in the date stamp on Howell's documents and the authentic WSPF date stamps. Dkt. 35, at 3.

I held a hearing on April 9, 2018, to resolve the factual disputes at the heart of the exhaustion issue, and I warned Howell that if I concluded that he had falsified his appeal documents, I would dismiss the entire case with prejudice. To enter such a sanction, it must be proven by a preponderance of the evidence that Howell in fact submitted fraudulent evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016), cert. denied, 138 S. Ct. 116 (2017).

Howell testified for himself at the hearing. The state called (1) Julie Payne, who worked as the warden's secretary at the time of the events in question, and handled incoming conduct-report appeals; (2) Andrew Hulce, who was a correctional sergeant at the time; and (3) Ellen Ray, an institution complaint examiner.

The initial question was whether the date stamps on the purported appeal and cover letter were legitimate. From a close look at the documents, it is virtually certain that the stamps were fabricated: none of the printing on the documents completely matches the typefaces of the stamp samples provided by the state.[1] They look hand-drawn or traced. Indeed, at the hearing, Howell agreed that they were fabricated.

---

[1] The state contends that Delta Unit did not use a date stamp that included the words "RECEIVED" or "WI SECURE PROGRAM FACILITY." Rather, only the date appeared on the stamp. Ellen Ray theorized that the other statements were removed from the Delta Unit's stamp. If true, this would provide another reason to think that the stamps on Howell's submissions were false. But the state did not provide any evidence about what the stamp looked like at the time of Howell's purported appeal. The state might be correct about the Delta Unit's *present-day* stamp, but Howell submitted contemporaneous "interview/information request" documents showing a stamp with the additional language. From the evidence provided by the parties, it is more likely that the date stamp included the additional language at the time of Howell's purported appeal.

But Howell said that he did not fabricate the stamps or submit the documents with those stamps. Instead, he says that the documents submitted to the court and to Dax were prior drafts of those documents that he kept in his legal file.[2] He says that his property was confiscated by staff around the time of his court submissions, and he theorizes that prison staff removed the versions he intended to send to the court, replaced them with the draft versions of his documents, and sloppily forged backdated stamps that they knew would arouse the suspicion of the opposing parties and the court.

This is an outlandish theory that I would find incredible unless there were substantial corroborating evidence. It would not have been physically impossible for prison staff to take the actions Howell says they did, but it strains credulity to think that staff would go through the arduous tasks of sifting through Howell's legal file, locating extremely similar drafts, and then forging date stamps on them, while also being so careless as to allow Howell to keep the "true" version of the documents he says he meant to send.

Howell has no evidence that this switch occurred, other than the copies of the documents he says were the ones he actually placed in the envelopes for mailing. Defs.' Ex. 10 and 11, at Dkt. 69-4 and 69-5. Those documents also contain May 18, 2016 date stamps, along with a circular stamp explicitly stating "WSPF Delta." Those stamps are smudged and faded enough that it is much more difficult to tell whether they were forged. The state hypothesizes that Howell or other inmates gained access to the date stamp and backdated the markings on these documents, but they have no proof of that. It is unnecessary to make a finding on the authenticity of those documents, because Howell's summary judgment

---

[2] The copies received by Dax's counsel, Defs.' Ex. 7 and 8, are located on the docket at Dkt. 69-2 and 69-3.

declaration provides strong evidence that he was the one who sent the documents containing the forged stamps.

In his declaration, Dkt. 31, Howell explicitly refers to "Exhibit 8" and "Exhibit 9" as his conduct-report appeal and cover letter, and states that the date stamps on those documents show that he filed a timely appeal. The court and Dax indeed received documents marked with those numbers—the documents Howell now claims are merely drafts that he did not intend to file.[3] The documents that Howell says are the true versions that he intended to file are not labeled with any exhibit numbers. But Howell testified that his jailhouse lawyer, Mitchell Zimmerman, added exhibit numbers to the bottom of the documents he calls drafts, and those numbers match the style of numbering appearing on the bottom of the other exhibits referred to by Howell in his declaration, *see* Dkt. 31-3 and 31-4. Howell did not explain why Zimmerman would have added exhibit numbers to drafts but not to the final versions. The much more likely scenario is that Zimmerman prepared, and Howell sent, exhibits with numbering matching the numbers he references in the declaration.

Another reason to disbelieve Howell relates to his explanation of a notation he placed on some of his documents. He testified that when he needed copies of documents to send to

---

[3] The copies received by this court and by Dax include the respective exhibit numbers at the top of each document and at the bottom of two of the four—the court's version of Exhibit 8 and Dax's version of Exhibit 9. This means that the exhibit-number markings on the court's and Dax's copies of Exhibits 8 and 9 are not identical. There are other discrepancies between the two sets of documents. For instance, the court's version of the conduct-report appeal does not include Howell's signature, but Dax's version does. The date stamp is located in slightly different positions on the appeal as well. These discrepancies do not cut in favor of either party, because both sides are saying that the other forged at least part of the documents, and it is unsurprising that there are inconsistencies between copies of forged documents. Howell did argue that someone other than him or Zimmerman tampered with the court-received documents by placing the exhibit numbers at the *top* of those documents. But he did not dispute that Zimmerman numbered the bottom of one set.

the court, he placed an "x" with a circle around it on the top of the documents he wanted copied, and on his request-for-disbursement form he told prison officials to copy all of the documents with that notation. That notation is not on the version of the documents he states he sent to the court and to Dax. But that notation does appear on the copies of Exhibit 8 received by the court and by Dax, and on the copy of Exhibit 9 received by Dax.

Because Howell stated at the hearing that he had not brought all of the documents relevant to this issue, I gave him a chance to file any other evidence that supported the arguments he made at the hearing. Howell followed by submitting a declaration reiterating that he did not submit false materials and that he did not have access to WSPF date stamps. He also submits evidence showing that in June 2016 he sent an information request to the office of the warden asking whether the office had received his conduct-report appeal. Following the hearing, Howell asked the warden for a copy of that information request. He says that the document he says he eventually received, Dkt. 71-1, at 5, was forged by prison staff, and he explains reasons why his request would not have looked like the one he received back from the warden. He does not explain what the point of prison staff fabricating this document would be. This document, along with a memorandum from the warden telling Howell that the office had not received the appeal Howell says he sent, show that Howell inquired about his appeal in June 2016, but it does not show that he actually filed an appeal in May 2016.

But whether Howell really did file an appeal is now beside the point: even if Howell had actually exhausted his administrative remedies, that would not excuse his submission of fraudulent evidence in this litigation. The only reasonable conclusion from the hearing testimony and all of the evidence submitted by the parties is that Howell submitted Exhibit 8

5

and Exhibit 9 to the court, that these documents contained fraudulent date stamps, and that Howell knew the stamps were fraudulent.

The next question is how to sanction Howell. As stated above, I warned him that I would dismiss the entire case with prejudice if I concluded that he submitted false evidence. I am required to consider other, lesser sanctions before dismissing the case, *see Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014), but I conclude that a lesser sanction would not be effective. For instance, Howell is proceeding *in forma pauperis*, so it is unlikely that a monetary sanction would work, *see id*. at 687. Merely excluding his evidence would not provide much incentive to be honest in the future. I conclude that it is appropriate to dismiss the entire case, including Howell's claims against defendant Dax, to sanction Howell for submitting false evidence of exhaustion.

The state asks for additional sanctions, such as issuing a strike under 28 U.S.C. § 1915(g) or dismissing Howell's other pending lawsuit, No. 16-cv-832-jdp. A strike is unwarranted given the limited statutory grounds for which they may be assessed. And because this is the first time that Howell is being sanctioned by the court, I decline to impose the additional sanction of dismissing his other case. But Howell should be aware that if he commits any misconduct in his other pending case or any future case he files, I will impose harsher sanctions, which will likely include dismissal of any pending case and a filing bar in this court.

One last point. This case shows that the stamping of documents as "received" by officials at WSPF is not a pointless formality, but an important indication of authenticity. WSPF would be well advised to adopt stamps that are not easily forged, use them systematically, and maintain them securely so they cannot be accessed without authorization.

ORDER

IT IS ORDERED that:

1. This case is DISMISSED with prejudice for plaintiff Joey Howell's misconduct.

2. All pending motions are DENIED as moot.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered May 15, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge